UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

EDWARD CUESTAS,

                Plaintiff,

   v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

                Defendant.

Case No. 3:11-cv-05480-RJB-KLS

REPORT AND RECOMMENDATION

Noted for April 27, 2012

Plaintiff has brought this matter for judicial review of defendant's denial of his applications for disability insurance and supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits should be reversed and this matter should be remanded for further administrative proceedings.

## FACTUAL AND PROCEDURAL HISTORY

On July 18, 2005, plaintiff filed an application for disability insurance and another one

REPORT AND RECOMMENDATION - 1

for SSI benefits, alleging disability as of August 1, 2004, due to an impulsive control disorder, depression, posttraumatic stress disorder, and a learning disability. See Administrative Record ("AR") 57, 108, 390, 453. Both applications were denied upon initial administrative review and on reconsideration. See AR 49, 52, 453. A hearing was held before an administrative law judge ("ALJ") on April 2, 2008, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 413-449.

On August 29, 2008, the ALJ issued a decision in which plaintiff was determined to be not disabled. See AR 17-33. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on April 1, 2009, making the ALJ's decision defendant's final decision. See AR 6; see also 20 C.F.R. § 404.981, § 416.1481. Plaintiff appealed defendant's decision to this Court, which, on March 31, 2010, reversed and remanded this matter for further administrative proceedings. See AR 473-87. On April 21, 2010, the Appeals Council vacated that decision and remanded this matter to the same ALJ to conduct further administrative proceedings pursuant to the Court's remand order. See AR 470, 472.

Another hearing was held was held before that ALJ on November 2, 2010, at which plaintiff, represented by counsel, appeared and testified, as did a different vocational expert. See AR 658-703. At that hearing, plaintiff amended his alleged onset date of disability to June 1, 2006. See AR 454. On May 23, 2011, the ALJ issued a second decision, in which plaintiff again was determined to be not disabled. See AR 453-69. It does not appear from the record that the Appeals Council assumed jurisdiction of the case. See 20 C.F.R. § 404.984, § 416.1484. The ALJ's decision therefore became defendant's final decision after sixty days. Id.

On June 23, 2011, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. See ECF #1-#3. The administrative record was filed with the Court on

REPORT AND RECOMMENDATION - 2

September 7, 2011. See ECF #11. The parties have completed their briefing, and thus this matter is now ripe for judicial review and a decision by the Court. Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for further administrative proceedings, because the ALJ erred: (1) in discounting his credibility; (2) in failing to properly develop the record in regard to his back impairment; and (3) in assessing his residual functional capacity. For the reasons set forth below, the undersigned agrees the ALJ erred in determining plaintiff to be not disabled, and thus recommends that defendant's decision be reversed, and that this matter be remanded for further administrative proceedings.

## DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.   The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a

REPORT AND RECOMMENDATION - 3

credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

The ALJ discounted plaintiff's credibility in part for the following reason:

> . . . [T]he claimant has described daily activities, such as doing farm chores, attending school, and working part-time after the amended alleged onset date [of disability]. These are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations (Exhibits 28F, 37F, and 38F). Although that work activity did not constitute disqualifying substantial gainful activity, it does indicate that the claimant's daily activities have, at

REPORT AND RECOMMENDATION - 4

>least at times, been somewhat greater than the claimant has generally reported. The fact that the impairments did not prevent the claimant from working at that time strongly suggests that it would not currently prevent work. He stopped working for reasons not related to the allegedly disabling impairments. . . .

AR 466. The Ninth Circuit has recognized "two grounds for using daily activities to form the basis of an adverse credibility determination." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007). First, daily activities can "meet the threshold for transferable work skills." Id. Thus, a claimant's credibility may be discounted if he or she "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Smolen, 80 F.3d at 1284 n.7.

The claimant need not be "utterly incapacitated" to be eligible for disability benefits, however, and "many home activities may not be easily transferable to a work environment." Id. In addition, the Ninth Circuit has "recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." Reddick , 157 F.3d at 722. Under the second ground in Smolen, a claimant's activities of daily living can "contradict his [or her] other testimony." Id.

Plaintiff argues the ALJ erred in discounting his credibility on the basis of performance of farm chores, asserting the record is silent as to the nature or extent of those chores. It is true that the record does not provide much in the way of detail regarding this issue, and thus by itself would not be a sufficient basis upon which to discount plaintiff's credibility. See AR 324 ("He spends his time doing chores on the farm, going to bible study on Wednesdays and [Alcoholics Anonymous] on Mondays."); 551 (reporting "being forced to leave his farm as his schoolwork interfered with his farm duties"). However, as the ALJ also noted, plaintiff attended school and

REPORT AND RECOMMENDATION - 5

worked part-time after his amended alleged onset date of disability, and he performed other daily activities not indicative of disability.

For example, plaintiff reported in mid-October 2005, that he prepared his own meals, did his own grocery shopping and "share[d] household chores fairly equally" with his roommate. AR 259. In late August 2008, he reported being "over tasked by his recent course of schooling and summer school, to which were added the expectations of chores and other work at home." AR 545. While this apparently resulted in "a period of somewhat increased irritability lasting a few weeks," plaintiff still reported that he felt he "managed this decently." Id.; see also AR 351, 353-54, 547-48. Indeed, plaintiff further reported "continu[ing] to be involved with Olympic College and [that his] grades ha[d] been good." AR 546. Although it does appear plaintiff underwent a period of some academic difficulty subsequently thereto, there is no indication that this was due to any of his alleged impairments. See AR 551, 553.

In any event, plaintiff continued to work part-time at Denny's during this period. See AR 553. Indeed, as the ALJ noted, "[h]e disclosed" in early September 2010, "that he quit Denny's because they were not giving him enough hours," and he was encouraged by his mental health counselor – and in fact agreed – "to look into Craigslist side jobs and reconnect with [the Washington State Department of Vocational Rehabilitation (']DVR[')]." AR 562. Therefore, plaintiff's own self-report belies his current claim that he could not keep working even part-time without having his symptoms increase to the point where he was unable to continue to do so on a regular and continuing basis. See Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001) (ALJ properly discounted claimant's credibility in part due to fact that he left his job for reasons other

REPORT AND RECOMMENDATION - 6

than his alleged impairment)[1]; Smolen, 80 F.3d at 1284 (ALJ may consider prior inconsistent statements concerning symptoms). Thus, considered together, the above daily activities do rise to a level sufficient for the ALJ to determine plaintiff to be less than fully credible concerning his claimed symptoms and limitations.

Citing Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), plaintiff argues the fact that he *attempted* to work is not a convincing reason to reject his testimony. But as discussed above, the only reason plaintiff did not continue working was apparently because he was not receiving enough hours. Thus, Lingenfelter is distinguishable on its facts. In that case, the Ninth Circuit stated that the mere "fact that a claimant tried to work for a short period of time and, because of his impairments, *failed*," does not mean "that he did not then experience pain and limitations severe enough to preclude him from maintaining substantial gainful employment." Id. at 1038 (emphasis in original). The Court of Appeals found the determination to discount the claimant's credibility on the basis of this work attempt was "especially unconvincing" where the claimant attempted to work "only because of extreme necessity," since "[u]nder these circumstances, it is at least as likely that the claimant tried to work in spite of his symptoms, not because they were less severe than alleged." Id. at 1038-39 (quoting ALJ).

In contrast to plaintiff in this case, the claimant in Lingenfelter, was fired from a job he performed for a period of nine weeks after his date last insured, "because he was too slow to do

---

[1] As further point out by the ALJ, the DVR records show "the claimant's biggest obstacle in getting a full-time job [wa]s not his physical or mental health conditions but his extensive criminal record." AR 466; see also AR 598-99, 616. Those DVR records also reveal plaintiff's job performance was seemingly unaffected by his alleged disabling impairments. See AR 581 ("doing well"), 582 ("Although his job hours c[ould] fluctuate . . . , it [wa]s not due to his performance," which was "good"), 583 ("was a touch frustrated because his hour[s] dipped again slightly," but "his supervisor . . . assure[d] me he is doing fine," and his "hours [were] based on volume of customers"), 586 ("help" was sought "with extending his hours," which Denny's did), 587 ("hours are going to be extended this weekend"), 588 ("sent home today, due to lack of work," although "[t]hey [we]re looking at expanding his evening hours"), 590 ("received a job at Denny's . . . for 10 hours a week," but "[h]e [wa]s hoping for more hours"), 591 ("the assistant manager fe[lt] that [plaintiff was] doing very well"), 592 ("doing well"; employer will be talked to "next week about a permanent hire-on"), 593 ("doing well . . . per [plaintiff's] report").

REPORT AND RECOMMENDATION - 7

the work adequately." Id. at 1033. The claimant also testified that "when he returned home from work each day his 'feet were so swollen,' and that he 'just couldn't do it anymore' because of the pain." Id. (quoting claimant). Again, the record fails to show plaintiff stopped working because of his impairments. The Ninth Circuit in Lingenfelter also expressly noted the claimant's "failed work attempt did not even take place during the relevant time period," i.e., the period between his alleged onset date of disability and date last insured.[2] Id. at 1039 (noting claimant had burden to prove he was disabled for at least twelve month period during that time). Here, however, the period of plaintiff's work activity at issue occurred between those two dates.

In addition, the ALJ in Lingenfelter had offered the claimant's unsuccessful work attempt as only one of two stated reasons for discounting his credibility. The other stated reason – that there was a consensus of medical opinion in the record that the claimant retained the capacity to perform sedentary work – the Ninth Circuit found was not supported by substantial evidence, but rather found the opposite appeared to be true. Id. at 1037-38. Given this, the Court of Appeals concluded that the claimant's work attempt "alone" was "not a clear and convincing reason for rejecting" his subjective pain and symptom testimony. Id. at 1038. Here as well Lingenfelter is distinguishable, as the ALJ in this case, as further discussed herein, provided other valid reasons for discounting plaintiff's credibility.

For example, the ALJ noted plaintiff had:

> . . . a long list of charges with violent and dishonest crimes, such as assault, domestic violence, burglary, and theft, and possession of stolen property (Exhibits 6F and 18F). While the claimant seems to have complied with the conditions of his sentences, the fact that he has a history of dishonesty

---

[2] To be entitled to disability insurance benefits, plaintiff "must establish that [his] disability existed on or before" the date his insured status expired. Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998); see also Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1460 (9th Cir. 1995) (social security statutory scheme requires disability to be continuously disabling from time of onset during insured status to time of application for benefits, if individual applies for benefits for current disability after expiration of insured status).

REPORT AND RECOMMENDATION - 8

> diminishes his credibility. The felony conviction carries some weight towards impugning his testimony and is considered in arriving at a conclusion as to his credibility overall.

AR 466; see Smolen, 80 F.3d at 1284 (ALJ may consider "ordinary techniques of credibility evaluation"). While not all of plaintiff's past convictions may bear on his veracity, those with respect to theft and possession of stolen property certainly do. Plaintiff argues his convictions occurred in the context of his drug and alcohol abuse and personality disorder. But although it may be plaintiff was abusing substances or suffering from a mental impairment at those times, there is no evidence that either actually *caused* him to commit those crimes, or otherwise had a significant role in his decision to commit them.

The ALJ further noted the record reflected "significant gaps in [plaintiff's] history of treatment for his [carpal tunnel syndrome] and trigger fingers after the amended alleged onset date [of disability], which show[ed] that the surgery was generally successful in relieving most of the symptoms." AR 466. Plaintiff does not challenge this basis for discounting his credibility, nor does the undersigned find it to have been improper. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (upholding ALJ in discounting claimant's credibility in part due to lack of consistent treatment, and noting that fact that claimant's pain was not sufficiently severe to motivate her to seek treatment, even if she had sought some treatment, was powerful evidence regarding extent to which she was in pain); Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered physician's failure to prescribe, and claimant's failure to request serious medical treatment for supposedly excruciating pain); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly found prescription of physician for conservative treatment only to be suggestive of lower level of pain and functional limitation); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (failure to assert good reason for not seeking treatment "can cast doubt

REPORT AND RECOMMENDATION - 9

on the sincerity of the claimant's pain testimony").

The ALJ also discounted plaintiff's credibility in part because:

> . . . New objective test results fail to show that the claimant's condition is so severe that he could not even open his hands as he alleged at the hearing (Exhibits 33F, 34F, 37F, and 40F). The office visit notes reflect numerous occasions on which the claimant did not specify any particular complaint, which contrasts with the current claim of ongoing, disabling symptoms at his lower back and legs and the need of multiple breaks while at work, since the amended alleged onset date. Besides, the record does not contain objective evidence to support a diagnosis of a specific severe back impairment or any mention of special breaks for the claimant at the employee's lounge as reported by him at the hearing.

AR 466. A determination that a claimant's subjective complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement. Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998). Plaintiff argues the ALJ inaccurately characterized his testimony regarding the severity of his hand impairment. But no specific challenge is made here to the ALJ's findings regarding lack of objective medical evidence – i.e., clinical findings – in the record to support a disabling hand or back condition. Nor does the undersigned find the ALJ committed any error in evaluating that evidence.

Lastly, the ALJ discounted plaintiff's credibility for the following reasons:

> The claimant has been prescribed and taken appropriate medications for the alleged mental impairments at times, which weighs in his favor. However, the medical records reveal that the medications have been relatively effective in controlling the claimant's symptoms when he was in compliance. There has been a period of time since the amended alleged onset date during which the claimant chose not to take any medications for those mental symptoms despite the complaints of allegedly disabling mental symptoms. It was also during the same period of time when he relapsed to heroin and "occasional" drinking (Exhibits 34F and 36F) and had reportedly worsened symptoms and limitations. As discussed above, even during the period when the claimant was not entirely compliant in taking prescribed medications and remaining clean and sober, he could still work part-time and make life decisions and arrangements notwithstanding his mental symptoms and limitations. The fact that the impairments did not prevent him from those activities at that time strongly suggests that they would likewise not prevent work when he is

REPORT AND RECOMMENDATION - 10

compliant and sober.

AR 467. The ALJ may discount a claimant's credibility on the basis of medical improvement. See Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). Once again, plaintiff does not challenge this stated basis for discounting her credibility, nor does the undersigned find the ALJ erred in relying on it to do so.

II.  The ALJ's Duty to Develop the Record

The ALJ found in relevant part in this case as follows:

> The claimant . . . has been described as having chronic low back pain and [a] hernia problem. However, the records do not contain any objective evidence to support a firm diagnosis of a specific impairment related to the alleged back pain. The record shows that the claimant was diagnosed with lumbar strain with sciatica in December 2005. A physical therapist evaluation performed in the same month shows no exertional limitations. In March 2006, it was noted that the back pain was controlled well by the prescribed physical therapy, stretching exercises, and pain medication (Exhibit 15F). In November 2007, the claimant complained [of] lower back pain again. However, [Donnaville F.] Ortiz[, M.D.,] only noted mildly reduced range of motion with mild pain with motion (Exhibit 21F). The claimant was not sent to any further studies or testing. The record shows that the claimant visited the emergency room in August 2009 and complained of back pain after carrying groceries up the hill. He was diagnosed with acute low back pain and prescribed Vicodin and Flexeril (Exhibit 38F, p. 9-11). Even though the claimant had an episode of back pain flared-up [sic] after the alleged onset date, there is no medical evidence to support that the condition has significantly interfered with the claimant's ability to engage in basic work activities for any continuous period of at least 12 months since the amended alleged onset date.[3] In July 2010, [Michael S.] Gurvey[, M.D.,] reviewed the record and noted that there was no firm diagnosis of any specific condition related to the alleged lower back pain. The medical consultant also opined that the claimant had no restrictions with lifting, carrying, sitting, standing, walking, pushing, and pulling (Exhibit 30F).

---

[3] To be found disabled, plaintiff must establish he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see also Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

REPORT AND RECOMMENDATION - 11

Therefore, the alleged back pain is not "severe" . . .[4]

AR 456-57.

Plaintiff argues the ALJ should have made an effort to develop the record further with respect to his alleged back pain, "rather than offering only a cursory evaluation" thereof. ECF #15, p. 9. The ALJ has a duty "to fully and fairly develop the record and to assure that the claimant's interests are considered." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations omitted). However, it is only where the record contains "[a]mbiguous evidence" or the ALJ himself has found "the record is inadequate to allow for proper evaluation of the evidence," that the ALJ's duty to "conduct an appropriate inquiry" is triggered. Id. (citations omitted); see also Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001).

Plaintiff notes that in Tonapetyan, the Ninth Circuit pointed out that while the ALJ "did not specifically find that the evidence of [the claimant's] mental impairment was ambiguous, or that he lacked sufficient evidence to render a decision, he relied heavily upon the testimony of the medical expert . . . who found just that." 242 F.3d at 1150 (pointing out further that medical expert recommended as well "that a more detailed [medical] report be obtained," and that "[h]e found it 'difficult to say' whether the medical record was complete enough to allow the ALJ to reach a conclusion in the case"). Plaintiff argues this case is similar, in that "the ALJ found that

---

[4] Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. At step two of the evaluation process, the ALJ must determine if an impairment is "severe." Id. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c), § 416.920(a)(4)(iii), (c); see also Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b), [§ 416.921(b); SSR 85- 28, 1985 WL 56856 *3. An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." See SSR 85-28, 1985 WL 56856 *3; see also Smolen, 80 F.3d at 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988). Plaintiff has the burden of proving that his "impairments or their symptoms affect [his] ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. See Smolen, 80 F.3d at 1290.

REPORT AND RECOMMENDATION - 12

there was no medical evidence that [his] back significantly interfered with his ability to engage in basic work activities for any continuous period." ECF #15, p. 10.

But as defendant notes, a finding of "no" medical evidence is not at all the same as there being *ambiguous* evidence concerning an alleged impairment. The latter triggers the ALJ's duty to further develop the record, while the former does not do so. Plaintiff goes on to argue that Dr. Gurvey "observed that there was not sufficient evidence in the record to form an opinion on the nature and severity of [his] impairments," and that despite this lack of evidence, the ALJ "simply accepted Dr. Gurvey's opinion in finding that [he] did not have a severe back impairment." ECF #15, p. 11. But whereas in <u>Tonapetyan</u> the medical expert acknowledged there was at least *some* evidence of a mental impairment (<u>see</u> 242 F.3d at 1150)[5], Dr. Gurvey found no objective clinical evidence of a back impairment in this case (<u>see</u> AR 515-16). Nor, also unlike in <u>Tonapetyan</u>, did Dr. Gurvey give any indication that he needed any additional evidence to form a medical opinion as to plaintiff's alleged back impairment. <u>See</u> 242 F.3d at 1150. The undersigned thus rejects the assertion made by plaintiff that "[a] substantial likelihood exists" here "that the ALJ would have assessed a more restrictive residual functional capacity," if the ALJ had sought to further develop

---

[5] As noted by the Ninth Circuit:

> . . . When asked for his diagnosis, [the medical expert] noted that [the claimant] was unquestionably "somewhat depressed." He resisted concluding that she did or did not suffer from schizophrenia, however, suggesting that he would "have to see more evidence of that and a more detailed explanation" from [the claimant's treating psychiatrist]. Only when pressed by the ALJ for a diagnosis "based upon what's in the record" did he give his diagnosis of mild depressive affective disorder, or "dysthymia." Yet, he remained equivocal throughout his testimony. For example, when asked about [the claimant]'s restrictions of daily activities, he responded: "Well, we have a dichotomy here between the two reports [of [the claimant's treating psychiatrist] and [another, examining psychiatrist]]. . . . I have no way of just saying let's divide them. I would say-I guess, I guess I have a difficult time with it." Finally, when asked by [the claimant]'s lay representative whether a complete report from [the claimant's treating psychiatrist] would change his opinion regarding [the claimant]'s mental impairment, [the medical expert] responded: "Yes. If you clarified her symptoms that she's telling him."

<u>Id.</u>

REPORT AND RECOMMENDATION - 13

the record in regard to that alleged impairment. ECF #15, p. 11.

III.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the sequential disability evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id. It thus is what the claimant "can still do despite his or her limitations." Id.

Residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ in this case assessed plaintiff with the residual functional capacity:

> **. . . to perform less than a full range of light work . . . He can lift/carry 20 pounds occasionally and 10 pounds frequently. He can stand and / or walk/ six hours in an 8-hour workday and can sit for about 6 hours in an eight hour workday. He can occasionally climb ladders, ropes, or scaffolds. He can frequently finger and handle with the right dominant hand. He is limited to simple routine tasks. He can have occasional superficial contact with the public and co-workers.**

AR 459 (emphasis in original). In contesting this RFC assessment, plaintiff notes his testimony regarding limitations related to his carpal tunnel syndrome, including dropping things because of

REPORT AND RECOMMENDATION - 14

numbness, pain and cramping in his hands. That testimony, plaintiff asserts, is supported by the medical evidence in the record. But the specific evidence plaintiff points to here merely consists of his own self-reports – with respect to which, as discussed above, the ALJ properly found him to be not fully credible – and clinical findings indicative of carpal tunnel syndrome, but no actual opined work-related limitations stemming therefrom. See ECF #15, pp. 12-13 (citing AR 332-33, 346-47, 377, 381, 518, 565, 654-55).

On the other hand, as noted by plaintiff, Dr. Gurvey did opine that plaintiff should have "[n]o chronic flexed wrist position" and "no repetitive fingering[,] i.e.[,] key boar[ding,]for more than 30 minutes without a 5 minute break." AR 517. Also as noted by plaintiff, the ALJ stated he was giving "significant weight" to Dr. Gurvey's no repetitive fingering limitation, "because it [was] consistent with the record as a whole and the evidence received at the hearing level [did] not show that [plaintiff was] more limited than determined by Dr. Gurvey." AR 461. However, the undersigned agrees with plaintiff that the ALJ erred in failing to also adopt the "[n]o chronic flexed position" limitation assessed by Dr. Gurvey or explain why he declined to do so. Nor is there any indication from Dr. Gurvey's report that he felt a limitation to frequent fingering and handling with the dominant right hand (see AR 459), would accommodate the no chronic flexed wrist position limitation. Thus, it is unclear whether the ALJ's assessment of plaintiff's residual functional capacity is completely accurate.

Defendant argues the ALJ's RFC assessment is supported by his remaining findings concerning plaintiff's ability to use his hands. But the problem is that the ALJ expressly stated he was giving significant weight to the no repetitive fingering limitation, while not addressing at all the no chronic flexed position limitation, even though both stemmed from the same diagnosis. Although the Court can draw "specific and legitimate inferences" from the ALJ's decision

REPORT AND RECOMMENDATION - 15

(Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989)), it is not at all clear the ALJ did or intended to do what defendant asserts she did here with respect to Dr. Gurvey's opinion. The undersigned, therefore, declines to make that inference.

Defendant further argues the ALJ's error here was harmless, because the ALJ relied on the jobs the vocational expert testified at the second hearing that plaintiff could do, require only occasional fingering and handling in either hand. An error will be deemed harmless only if it is "inconsequential" to the ALJ's "ultimate nondisability determination." Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion); see also Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007) (any error on part of ALJ would not have affected "ALJ's ultimate decision."). As discussed above, though, Dr. Gurvey gave no indication that a limitation on fingering and handling properly accounts for a limitation to no chronic flexed wrist position. Nor is there any indication elsewhere in the record that such is the case, and defendant has not made any actual showing otherwise. Accordingly, the undersigned finds the ALJ's error here was not harmless.

IV.     This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

REPORT AND RECOMMENDATION - 16

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues remain with respect to Dr. Gurvey's no chronic flexed wrist position limitation, and thus with respect to plaintiff's residual functional capacity and his ability to perform other jobs existing in significant numbers in the national economy,[6] this matter should be remanded for further administrative proceedings.

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends that the Court find the ALJ improperly determined plaintiff to be not disabled. The undersigned thus also recommends that the Court reverse defendant's decision and remand this matter for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn,

---

[6] If a claimant cannot perform his or her past relevant work at step four of the sequential disability evaluation process, at step five thereof the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett, 180 F.3d at 1098-99; 20 C.F.R. [§ 404.1520(d), (e), § 416.920(d), (e).

REPORT AND RECOMMENDATION - 17

474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **April 27, 2012**, as noted in the caption.

DATED this 9th day of April, 2012.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 18